[No. 33512-0-I.    Division One.    August 8, 1994.]

PAULA WOODHOUSE, ET AL, *Appellants*, v. RE/MAX NORTHWEST REALTORS, ET AL, *Respondents.*

*Gerald Michael Ormiston* and *Brousseau, Jankovich & Ormiston,* for appellants.

*Phillip C. Raymond* and *Ogden Murphy Wallace,* for respondents.

AGID, J. — Paula and Tom Woodhouse appeal the trial court's order of summary judgment in their action against RE/MAX Northwest Realtors (RE/MAX) and one of its brokers, Larry Simonson, in which they sought to hold RE/MAX and Simonson liable for money they lost as a result of a loan to Tony Mattsen, a former RE/MAX salesperson.[1] We affirm.

## FACTS

During June of 1991, the Woodhouses entered into an agreement with Tony Mattsen to list their home for sale. During August of 1991, they entered into a second listing agreement for the sale of a vacant lot adjacent to their home.[2] On January 14, 1992, Mattsen contacted Paula Woodhouse and told her that he knew of a young couple who had some credit or bankruptcy problems and needed a loan for a short period of time until they could sell their house. Mattsen told her the loan would prevent creditors from taking the couple's home and asked her for $8,000. Ms. Woodhouse met Mattsen at the Woodhouses' bank, withdrew

---

[1]The Woodhouses argued three bases of liability below: (1) the Washington State Real Estate Brokers and Salespersons Act (Act), RCW 18.85, (2) negligent supervision, and (3) the Washington Consumer Protection Act (CPA), RCW 19.86. Only the first two claims are addressed here because the Woodhouses provide no analysis for their CPA claim. *See* RAP 10.3(a)(5) (appellant's brief should contain an argument in support of the issues presented for review, together with citations to legal authority). The Woodhouses have neither cited nor discussed the factors a party must establish in order to prevail in a private CPA action. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

[2]Both properties were sold, and the sales are not relevant to this action. The Woodhouses' claims in this action arise out of money they loaned Mattsen independent of their interactions with him for the sale of their house or vacant lot.

$8,000 from their bank account and gave him a cashier's check. Mattsen signed a promissory note for $8,500 due 16 days later. The promissory note provided for 12 percent interest in the event payments were late. Ms. Woodhouse made no effort to contact any of the individuals Mattsen said were involved in the transaction with the young couple.

During the next month, Mattsen asked for varying sums of money every few days. On seven different occasions, he requested and received thousands of dollars. On each occasion Mattsen gave a different reason why the additional sums were needed to help the young couple. The sums varied from $1,700 to $10,000. According to Ms. Woodhouse, on each occasion Mattsen told her that she would get a few hundred dollars more in interest. Ultimately, the Woodhouses gave Mattsen a total of $44,000. When Ms. Woodhouse gave Mattsen the last check on February 19, 1992, he signed a second promissory note for $48,500 requiring final payment on or before February 28, 1992. Later, the Woodhouses contacted Mattsen in an attempt to collect the money they had given him. On April 22, 1992, Mattsen admitted to them that he did not have the funds and was filing for bankruptcy.

Simonson first learned of Mattsen's misconduct at about 11 a.m. on April 22, 1992. Mattsen told Simonson that he was filing for bankruptcy and had "borrowed" many thousands of dollars he could not repay from several persons. Approximately 2 hours later Ms. Woodhouse called Simonson. An hour later, Simonson pulled Mattsen's license and sent it to the Department of Licensing (DOL), thereby terminating Mattsen's right to work out of the RE/MAX agency. He also told Mattsen to surrender his office key and locked Mattsen's office. Soon thereafter, Simonson and RE/MAX initiated a complaint against Mattsen with DOL.

The Woodhouses sued RE/MAX and Simonson (collectively RE/MAX) seeking to hold them liable for Mattsen's misconduct. The Woodhouses appeal the trial court's grant of summary judgment in favor of RE/MAX.

## RCW 18.85 CLAIM

RE/MAX argues that it is not liable for Mattsen's misconduct because he was not acting as a salesperson when he engaged in that misconduct. A salesperson is defined under the Act as

> any natural person employed, either directly or indirectly, by a real estate broker, or any person who represents a real estate broker in the performance of any of the acts specified in subsection (1) of this section[.]

RCW 18.85.010(2).

RE/MAX contends that because Mattsen was not performing any of the acts specified in RCW 18.85.010(1) when he procured the loans from the Woodhouses, he was not a salesperson for the purposes of the Act and it is, therefore, not liable for his conduct. Although we hold that RE/MAX is not liable for Mattsen's misconduct, we reject this reading of the statute because it ignores the language quoted above. The statute provides two alternative definitions of a salesperson: one who is employed by a real estate broker or one who represents a broker in the acts specified in RCW 18.85.010(1). RE/MAX has not contended that Mattsen was not its employee when he was engaged in the conduct, and it acknowledges that he was not terminated until Simonson found out about the misconduct. Thus, Mattsen was a "natural person employed, either directly or indirectly, by a real estate broker" during all times relevant to the misconduct. RCW 18.85.010(2). While we agree with RE/MAX that Mattsen was not performing any of the acts listed in RCW 18.85.010(1) and was clearly acting outside the scope of his employment as a salesperson, he was a salesperson as defined by the Act until he was terminated.

Under RCW 18.85.155 "[r]esponsibility for any salesman, associate broker or branch manager in conduct covered by this chapter shall rest with the broker to which such licensees shall be licensed." The Woodhouses' argument rests on the premise that this provision, in conjunction with RCW 18.85.230, listing grounds on which the Director of DOL may impose discretionary sanctions, gives them a pri-

vate cause of action. We hold that nothing in RCW 18.85 establishes a private cause of action for damages arising out of conduct listed in RCW 18.85.230. By its terms, that provision of the statute does nothing more than establish grounds upon which the Director of DOL may discipline persons covered by the Act.[3]

The Supreme Court addressed a similar issue in the context of a legal malpractice claim in *Hizey v. Carpenter*, 119 Wn.2d 251, 830 P.2d 646 (1992). The court held that the Code of Professional Responsibility (CPR) and the Rules of Professional Conduct (RPC) do not set forth a standard for civil liability. Thus, violations of their provisions do not give rise to an independent cause of action against an attorney. 119 Wn.2d at 258-59. The court held that a "breach of an ethics rule provides only a public, *e.g.*, disciplinary, remedy and not a private remedy." 119 Wn.2d at 259. Although RCW 18.85 contains no express disclaimer of an intent to establish standards of civil liability, a factor relied on in *Hizey*, the wording of RCW 18.85.230 supports a similar result in this case. The introduction to that section provides:

> The director may, upon his or her own motion, and shall upon verified complaint in writing by any person, investigate the actions of any person engaged in the business or acting in the capacity of a real estate broker, associate real estate broker, or real estate salesperson, regardless of whether the transaction was for his or her own account or in his or her capacity as broker, associate real estate broker, or real estate salesperson, and may impose any one or more of the following sanctions: Suspend or revoke, levy a fine not to exceed one thousand dollars for each offense, require the completion of a course in a selected area of real estate practice relevant to the section of this chapter or rule violated, or deny the license of any holder or applicant[.]

Like the Rules for Lawyer Discipline setting forth procedures and sanctions for violations of the CPR and RPC, the

---

[3]Because we hold that RCW 18.85.230 does not provide a private cause of action, we do not need to address RE/MAX's argument that, if Mattsen was a salesperson at the time, it is nonetheless exempt from liability under WAC 308-124D-061 . That regulation provides that a broker will not be held responsible for inadequate supervision under RCW 18.85.230 if the requirements of the regulation are met. Because RCW 18.85.230 does not apply here, WAC 308-124D-061, therefore, is also inapplicable.

Act by its terms establishes only a professional conduct code and a public, disciplinary remedy for violations of that code. This is not equivalent to a private right of action which, if it chose to, the Legislature could enact. Therefore, the Woodhouses cannot rely on the disciplinary provisions of RCW 18.85 to seek recovery from RE/MAX of the money they lost to its employee.

The Order of Summary Judgment is affirmed.

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. See RCW 2.06.040; CAR 14.

SCHOLFIELD and COLEMAN, JJ., concur.